UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NEIL ZACCARI,

Plaintiff,

v.

APPRIO, INC.,

Defendant.

Civil Action No. 18-1560 (JDB)

MEMORANDUM OPINION

Neil Zaccari brings this suit against his former employer, Apprio, Inc., for the alleged infringement of his copyrighted software. Zaccari raises four claims against Apprio: breach of contract, copyright infringement, civil conspiracy, and trade secret misappropriation. Pending before the Court is [11] Apprio's motion to dismiss each claim for lack of subject matter jurisdiction, failure to state a claim, or both. For the reasons that follow, the Court will grant Apprio's motion and dismiss the complaint.

BACKGROUND

I.  FACTS[1]

Apprio, a government contractor, hired Zaccari as a "business process redesign consultant" in 2015. Compl. [ECF No. 1] ¶ 7. In consideration for his employment, Zaccari signed an agreement assigning any rights in his work product to Apprio during his employment. Id. ¶ 8; see

---

[1] The facts are drawn from plaintiff's complaint and assumed to be true for purposes of the motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

1

Proprietary Information and Assignment of Inventions Agreement ("Agreement"), Ex. 2 to Compl. [ECF No. 1-2].[2]

Zaccari's work for Apprio involved advising the Defense Contract Management Agency ("DCMA"), a component of the Department of Defense ("DoD") that helps defense contractors and suppliers comply with federal requirements in government contracts. Compl. ¶ 5. At the time, DCMA was working to redesign its business processes through the development and implementation of an Integrated Workflow Management System ("IWMS"). Id. ¶¶ 7, 12. Based on his expertise as a business consultant, Zaccari was tasked with sharing "private sector process improvements" and other "best practices" with DCMA. Id. ¶ 7

Several DCMA teams were working on aspects of the agency's business process redesign, including a team called "BPR 1." Id. ¶ 12. The BPR 1 team was responsible for redesigning DCMA's contract receipt and review process. Id. Although Zaccari was not hired to work with BPR 1, he "independently developed and wrote" software to help "automate[] the inefficient and ineffective contract receipt and review process DCMA's agents were doing manually." Id. ¶¶ 3, 14. Zaccari's contract receipt and review program ("CRR") was based on a different program that he had independently developed in 2008 ("VBA"). Id. ¶¶ 2, 14.

On May 31, 2016, Zaccari demonstrated CRR to Apprio Vice President, Michelle Coelho. Id. ¶ 15. Coelho then directed Zaccari to conduct similar demonstrations for the BPR 1 team. Id. ¶¶ 15–16. After doing so, Zaccari emailed a copy of the program to BPR 1 for evaluation. Zaccari did not license the BPR 1 team to do anything other than evaluate his software and, after observing a BPR 1 team member modifying CRR's code, instructed her to refrain from making further modifications without his permission. Id. ¶ 16.

---

[2] Because the Agreement is attached to and incorporated in the complaint, the Court may consider it to determine whether the complaint states a claim. Farah v. Esquire Magazine, 736 F.3d 528, 534 (D.C. Cir. 2013).

2

Approximately one month later, Zaccari demonstrated CRR to other senior employees at DCMA, including IWMS Program Lead Antoine McNeil. Id. ¶ 17. McNeil subsequently contacted Apprio executives and "demanded" a copy of the application. Id. ¶ 18. In response, "Apprio's leadership directed Zaccari to give the source code for" CRR to McNeil, and to provide a copy of the application to the BPR 1 team. Id.

The BPR 1 team then "removed Zaccari's name as [the] author [of] CRR" and renamed the program "ConCISE." Id. ¶ 19. Next, McNeil worked with Discover Technologies LLC ("DT"), another government contractor, to create a "derivative" application using CRR's source code. Id. ¶ 20. DCMA later shared copies of CRR with various other DoD agencies and, in 2017, implemented a version of ConCISE that was similar to CRR. Id. ¶¶ 23, 33. DCMA employees predicted that ConCISE would save the agency millions of dollars. Id. ¶¶ 21, 26, 34.

Although Zaccari advised supervisors at Apprio that he owned CRR and repeatedly asked Apprio to "confront DCMA" about the use of CRR without his authorization or consent, his requests were ignored. Id. ¶¶ 24, 30. On April 23, 2018, Zaccari filed an application to register CRR with the U.S. Copyright Office, which was subsequently accepted. Id. ¶ 4.

## II. PROCEDURAL HISTORY

In June 2018, Zaccari filed this lawsuit.[3] A few months later, Apprio filed its own suit against Zaccari arising out of the same facts. See Apprio, Inc. v. Zaccari, Civ. No. 18-2180 (filed Sept. 21, 2018). The Court consolidated the cases and stayed briefing and discovery on Apprio's claims pending further order of the Court. See Jan. 11, 2019 Order [ECF No. 15].

---

[3] In addition to the suit against Apprio here, Zaccari sued the United States in the U.S. Court of Federal Claims, and sued DT in the U.S. District Court for the Eastern District of Virginia. Both courts recently have issued opinions. See Zaccari v. United States, 142 Fed. Cl. 456, 463 (2019) (granting in part and denying in part the government's motion to dismiss); Zaccari v. Discover Techs. LLC, Civil No. 3:18-453-HEH, 2018 WL 6834362 (E.D. Va. Dec. 28, 2018) (granting in part DT's motion to dismiss).

3

Zaccari brings four claims against Apprio. Count I alleges that Apprio breached the assignment of inventions Agreement the parties entered in 2015. Compl. ¶¶ 36–42. Count II alleges copyright infringement under the United States Copyright Act of 1976, 17 U.S.C. § 101 et. seq. Id. ¶¶ 43–51. Count III alleges civil conspiracy. Id. ¶¶ 52–55. Count IV alleges misappropriation of trade secrets under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1831 et seq. Id. ¶¶ 56–62. Zaccari seeks, among other things, $63,000,000 in actual damages and injunctive relief ordering Apprio not to infringe his rights in CRR. Id. at 14–15.

Apprio has moved to dismiss the complaint and Zaccari has opposed. See Apprio, Inc.'s Mot. to Dismiss the Compl. Under Fed. R. Civ. P. 12(b)(1) & 12(b)(6) ("Def.'s Mot.") [ECF No. 11]; Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n") [ECF No. 12]. The motion is fully briefed and ripe for resolution.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint that "pleads facts that are merely consistent with a defendant's liability" falls short of showing plausible entitlement to relief. Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting Iqbal, 556 U.S. at 678). The Court must take all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc., 525 F.3d 8, 15 (D.C. Cir. 2008). However, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement" do not satisfy the pleading standard. Iqbal,

4

556 U.S. at 678 (citation and internal quotation marks omitted). The Court need not accept legal conclusions or inferences drawn by the plaintiff which are unsupported by facts alleged in the complaint. Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 913 (D.C. Cir. 2015).

## ANALYSIS

Apprio moves to dismiss each of the four claims in this matter: breach of contract, copyright infringement,[4] civil conspiracy, and trade secret misappropriation. The Court considers each claim in turn, starting with breach of contract.

### I. BREACH OF CONTRACT

Under District of Columbia law,[5] "[t]o prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." Francis v. Rehman, 110 A.3d 615, 620 (D.C. 2015) (internal citation and emphasis omitted). "However, to state a claim for breach of contract so as to survive a Rule 12(b)(6) motion to dismiss, it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach." Id. To identify the nature of defendant's breach, plaintiff must adequately allege defendant "owed [him] a contractual obligation and then breached it." Chambers v. NASA Fed. Credit Union, 222 F. Supp. 3d 1, 9 (D.D.C. 2016) (citing Rehman, 110 A.3d at 620); see also Logan v. LaSalle Bank Nat'l Ass'n, 80 A.3d 1014, 1023–24 (D.C. 2013) (dismissing breach of contract claim under Rule

---

[4] Apprio asserts that this Court has subject matter jurisdiction purely by virtue of the federal copyright infringement claim and contends that, if the infringement claim is dismissed, the Court should decline supplemental jurisdiction to consider the remaining state law claims. See Def.'s Mot. at 15. Because the Court otherwise has subject matter jurisdiction over the state claims pursuant to 28 U.S.C. § 1332, however, it need not consider this argument. Section 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Here, the amount in controversy requirement is met and the suit is between citizens of different states. See Compl. at 14 (Zaccari seeks $63,000,000 in damages); id. at 2 (Zaccari is a citizen of Virginia and Apprio is a citizen of Delaware (place of incorporation) and Washington, D.C. (principal place of business)).

[5] District of Columbia law governs the Agreement. See Agreement ¶ 11.1.

5

12(b)(6) where plaintiff "identifie[d] neither a governing contractual provision, nor an action or omission constituting a material breach").

Here, Zaccari alleges that Apprio is obligated under the Agreement to provide him written authorization before incorporating his proprietary software into Apprio work product, but that Apprio failed to do so. See Compl. ¶ 39. Apprio denies making any such promise in the Agreement. See Def.'s Mot. at 15–17. The central question for the Court, then, is whether Apprio had any contractual obligation to provide written authorization to Zaccari. That question is one of contract interpretation.

D.C. courts interpret contracts objectively, giving effect to the clear terms of agreements regardless of the intent of the parties at the time of contract formation. Adler v. Abramason, 728 A.2d 86, 88 (D.C. 1999). "In construing a contract, the court must determine what a reasonable person in the position of the parties would have thought the disputed language meant." Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp., 944 A.2d 1055, 1064 (D.C. 2008) (citation omitted). "Where the language in question is unambiguous, its interpretation is a question of law for the court." Id. (citation omitted).

With those principles in mind, the Court turns to the language of the Agreement. The complaint does not identify which provisions of the Agreement Apprio allegedly breached. Zaccari's opposition argues, however, that the complaint was intended to allege that Apprio breached various parts of Section 2 of the Agreement, entitled "Assignment of Inventions." Agreement ¶ 2; see Pl.'s Opp'n at 5.

Section 2 requires Zaccari "to assign . . . to [Apprio] all [his] right, title and interest in and to any and all Inventions . . . during the period of [his] [s]ervice." Agreement ¶ 2.3. The parties do not dispute that the term "Inventions" includes software like CRR and that Zaccari's "service"

refers to "all times during [Zaccari's] employment or engagement as an independent contractor." Id. ¶ 1.1, 1.2; see also id. ¶ 5 (stating that Zaccari "will not . . . engage in any employment or business activity other than for the Company" "during the period of [his] [s]ervice"). The Agreement further provides that assignment excludes "Prior Inventions," which are in turn defined as inventions Zaccari made "prior to the commencement" of his employment that "[he] both (a) may use in connection with [his] [s]ervice and (b) consider[s] to be [his] property . . . that [he] wish[es] to have excluded from the scope of th[e] Agreement." Id. ¶ 2.2. The Agreement continues that, "[t]o preclude any possible uncertainty," Zaccari agrees to "set forth on a Previous Inventions Disclosure Form . . . a complete list" of Prior Inventions, and that "if, in the course of his [employment], [he] incorporate[s] a Prior Invention into a Company product, process[,] or machine, the Company is hereby granted . . . [a] worldwide license . . . to . . . sell such Prior Invention." Id. Finally, the contract states that "[n]otwithstanding the foregoing, [Zaccari] agree[s] that [he] will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions without the prior written consent of an authorized officer of the Company." Id. (emphasis added).

Zaccari argues that the foregoing provisions imply Apprio had a duty to "provide[] 'prior written consent of an authorized officer of the Company' before directing Zaccari to give a copy of his software to [the government]." Pl.'s Opp'n at 5 (quoting Agreement ¶ 2.2); see also Compl. ¶ 39 (alleging that "[d]espite [his] VBA software being a Prior Invention" under the Agreement, "an authorized officer of Apprio never provided prior written authorization to Zaccari to incorporate or permit the incorporation of either his VBA software or his CRR Software into any Apprio work product"). Apprio responds that, even liberally construed, Zaccari has only identified

7

contractual provisions that set forth his obligations under the Agreement, not Apprio's. See Def.'s Mot. at 16–18.

The Court agrees with Apprio. The language of the Agreement unambiguously requires Zaccari to <u>obtain</u> prior consent from Apprio should he decide to incorporate a Prior Invention; it does not require <u>Apprio</u> to <u>provide</u> such consent to Zaccari. Indeed, the complaint itself states that "<u>Zaccari</u> agreed that '[he] [would] not incorporate . . . Prior Inventions . . . without the prior written consent of an authorized offer of the Company.'" Compl. ¶ 10 (quoting Agreement ¶ 2.2) (emphasis added). As Apprio points out, and as the language of the Agreement makes obvious, the purpose of the provision is to protect Apprio from precisely the type of suit that Zaccari now brings—<u>i.e.</u>, an employee's claim that an invention created during his service was in fact adapted from a prior invention he owns. See Apprio, Inc.'s Reply Mem. in Supp. of Def.'s Mot. [ECF No. 13] at 7. Zaccari has identified no other provision that Apprio has allegedly breached.[6]

"[O]ne cannot breach a contract without breaching a particular obligation created under the contract . . . ." <u>Ihebereme v. Capital One, N.A.</u>, 730 F. Supp. 2d 40, 47 (D.D.C. 2010); see also <u>Regan v. Spicer HB, LLC</u>, 134 F. Supp. 3d 21, 30 (D.D.C. 2015) (dismissing breach of contract

---

[6] Zaccari does generally allege that Apprio failed to perform its obligations under the Agreement when it "forced [him] to provide [the government] with a copy of his CRR Software application." Id. ¶ 40. But this general statement similarly fails to identify any contractual obligation under the Agreement that Apprio allegedly breached. See <u>Burnett v. Am. Fed'n of Gov't Emps.</u>, 102 F. Supp. 3d 183, 193 (D.D.C. 2015) ("Courts have dismissed breach of contract claims for vagueness or imprecision." (citing cases)). Zaccari now appears to argue that this general statement implicates an obligation contained in Paragraph 2.4 of the Agreement. See Pl.'s Opp'n at 5 (citing Agreement ¶ 2.4). The complaint draws no such connection, however, and "it is axiomatic that Plaintiffs cannot amend their Complaint via their briefs." See <u>Fares v. Smith</u>, 249 F. Supp. 3d 115, 125 (D.D.C. 2017), <u>aff'd</u>, 901 F.3d 315 (D.C. Cir. 2018). Nevertheless, even had the complaint adequately alleged that Apprio breached Paragraph 2.4, Zaccari still would not have stated a claim. Paragraph 2.4 provides that "[Zaccari] recognize[s] that this Agreement will not be deemed to require assignment of any invention that was developed entirely on [his] own time without using the Company's equipment, supplies, facilities, or trade secrets and neither related to the Company's actual or anticipated business, research or development, nor resulted from work performed by [him] for the Company." Agreement ¶ 2.4. Putting aside that Zaccari does not plausibly allege CRR was "[un]related to [Apprio's] actual or anticipated business," this provision does not contain any contractual promise or obligation that Apprio allegedly failed to perform. Instead, it defines the boundary of <u>Apprio's</u> rights to Zaccari's inventions. While the limitations described might prevent Apprio from later asserting ownership over certain inventions in a subsequent copyright dispute, they do not form an adequate basis for a breach of contract claim by Zaccari.

claim "because [p]laintiff . . . failed to identify an obligation or duty arising out of the . . . Contract that was breached"). Accordingly, because Zaccari has failed to identify the existence of any contractual promise relevant to Apprio's alleged breach, this claim will be dismissed for failure to state a claim.

## II. COPYRIGHT INFRINGEMENT

The Court now turns to the copyright infringement claim in Count II. Before considering whether Zaccari has alleged sufficient facts to make out a claim, however, the Court must determine whether the claim is properly before this Court. Copyright claims against the government or against government contractors acting with the government's "authorization and consent" must be brought in the Court of Federal Claims. See 28 U.S.C. § 1498(b). No party disputes that Apprio is a government contractor. To determine whether Zaccari's infringement claim must be brought in the Court of Federal Claims, then, only one question remains: has Apprio "establish[ed] that the [U.S.] government authorized or consented to the [government contractor's alleged] copyright infringement . . . ?" Auerbach v. Sverdrup Corp., 829 F.2d 175, 180 (D.C. Cir. 1987). If the answer is yes, then the claim must be dismissed.

Here, Apprio plainly has established that the government provided its authorization and consent. The government has filed a statement "to inform the Court that [it] has granted Apprio[] the Government's 'authorization and consent' as to the acts alleged to have been committed by Apprio in Count II of Mr. Zaccari's Complaint." Statement of Interest of the United States [ECF No. 18] at 1. The statement continues that, pursuant to section 1498(b), "any infringement by Ap[p]rio, whether direct or indirect, is transferred to the Government by this invocation." Id. at 5. The government's unequivocal authorization and consent for the alleged infringement is sufficient to trigger section 1498(b). See Auerbach, 829 F.2d at 179–80 (noting that for purposes

of section 1498(b), "express documentary evidence" of the government's consent "[o]bviously . . . will do," and that "the form of the [government's] consent" may include "retroactive consent"); see also Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 198 n.7 (D.C. Cir. 1992) (same). Notably, Zaccari's opposition concedes that dismissal of his copyright claim is warranted if the government explicitly authorizes consent. See Pl.'s Opp'n at 11 (stating that "[i]f the Government . . . admits . . . that Apprio [allegedly] indirectly infringed with its authorization and consent, then this Court would clearly be divested of jurisdiction" under section 1498(b)).[7]

Because there can be no reasonable dispute that the government authorized or consented to Apprio's alleged infringement, the Court finds that section 1498(b) applies. Hence, Zaccari's copyright infringement claim may only be brought before the U.S. Court of Federal Claims, and here the Court must dismiss the claim in Count II.[8]

---

[7] Even had the government failed to provide its explicit authorization and consent, the Court would have found that section 1498(b) bars the infringement claim for the reasons stated in the related Eastern District of Virginia case. See Discover Techs. LLC, 2018 WL 6834362, at *4. There, the court rejected as "incongruous with the alleged facts . . . presented in the Complaint" Zaccari's position that the other contractor, DT, acted without the government's authorization and consent. Id. "[A]s described in the Complaint," the court explained, "the alleged infringement not only occurred under the government's authorization or consent, it was performed by the government with support from [Discover Technologies]." Id. Because the alleged infringement occurred in "collaborat[ion]" with the government, the court continued, "[t]he record . . . clearly establishes that [d]efendant was acting for and with the authorization or consent of the government." Id. The same is true here. The complaint in this case likewise alleges that the government infringed Zaccari's rights to CRR, while Apprio merely "contributed" to the same by, among other things, "failing to assist Zaccari" in stopping the government's infringement. Compl. ¶ 49; see id. ¶¶ 45–51. Where, as here, the government itself is the direct infringer and the contractor is not accused of independently engaging in any direct infringement, section 1498(b) plainly applies. See Astornet Techs. Inc. v. BAE Sys., Inc., 802 F.3d 1271, 1277 (Fed. Cir. 2015) (affirming dismissal of suit on similar grounds where plaintiff alleged government contractors "induced (and contributed to) direct infringement by" government agency).

[8] Whether section 1498(b) imposes a jurisdictional bar or merely codifies an affirmative defense has been the subject of some debate. See Herbert, 974 F.2d at 196 ("The question of whether § 1498(b) is only an affirmative defense [rather than a jurisdictional bar] is not itself free from doubt."). The D.C. Circuit has suggested, but has not definitively decided, that section 1498(b) is jurisdictional. See Auerbach, 829 F.2d at 181 (characterizing dismissal pursuant to 1498(b) as "a dismissal for want of jurisdiction"); see also Herbert, 974 F.2d at 196 n.3 (noting that the Supreme Court has on two occasions characterized a related provision as jurisdictional). Because the parties do not dispute the issue, see Pl.'s Opp'n at 12 n.2; Def.'s Mot. at 9, the Court will proceed on the understanding that 1498(b) is jurisdictional and dismiss the claim pursuant to Federal Rule of Civil Procedure 12(b)(1). See Herbert, 974 F.2d at 197 (declining expressly to decide whether 1498(b) is jurisdictional when parties failed to raise the question but proceeding "on the understanding that § 1498(b), when applicable, strips the District Court of subject matter jurisdiction over authorized copyright infringement"). Even if section 1498(b) merely codifies an affirmative defense, however, the Court would still find dismissal warranted: Apprio in that case plainly would have satisfied its burden to

### III.   CIVIL CONSPIRACY

The Court now proceeds to Zaccari's civil conspiracy claim. "Under both federal and District of Columbia law, civil conspiracy is not actionable in and of itself." Riddell v. Riddell Wash. Corp., 866 F.2d 1480, 1493 (D.C. Cir. 1989). Instead, it "serves . . . 'as a device through which vicarious liability for the underlying wrong may be imposed upon all who are a party to it . . . .'" Hall v. Clinton, 285 F.3d 74, 82 (D.C. Cir. 2002) (citation omitted). To state a claim for civil conspiracy, then, Zaccari must allege an agreement to commit some "independently actionable" underlying wrong "for which a remedy may be obtained." Id. at 82–83 (citations omitted).

Zaccari alleges that Apprio and the government "mutually undertook" to "take and use Zaccari's software without authorization," to "maliciously compel[] Zaccari to give a copy of his CRR Software application to [the government] against his will," and to "hinder[] Zaccari from seeking a license [for] his CRR Software." Compl. ¶¶ 52–55. Although failing specifically to identify any independently actionable wrong in the complaint, Zaccari now contends (and Apprio does not dispute) that the underlying wrong alleged is copyright infringement. See Pl.'s Opp'n at 15 (stating that his civil conspiracy claim "arise[s] from direct or indirect infringement of Zaccari's software"); Def.'s Mot. at 24 (acknowledging that "the underlying wrong is purportedly copyright infringement").

As explained above, however, this Court lacks jurisdiction to consider the copyright infringement claim. Because civil conspiracy is not a freestanding cause of action, and because Zaccari has not stated a claim for any wrong other than infringement, his claim for civil conspiracy must also fail. See Meng v. Schwartz, 305 F. Supp. 2d 49, 60 (D.D.C. 2004) ("[D]ismissal of the

---

raise and establish that the government provided its authorization and consent to Apprio, and thus that section 1498(b) bars the infringement claim.

plaintiffs' . . . negligence claims also disposes of any underlying tort to which the civil conspiracy claim could have attached, necessitating its dismissal."); see also Riddell, 866 F.2d at 1494 (noting that "[w]ithout the support of the underlying wrongs, the [civil] conspiracy counts . . . collapse").[9]

### IV. TRADE SECRET MISAPPROPRIATION

Zaccari's final claim is brought under the DTSA, which permits plaintiffs to bring private causes of action if they "own[] a trade secret that is misappropriated." 18 U.S.C. § 1836(b)(1). Misappropriated means either "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person" who meets one of several conditions. 18 U.S.C. § 1839(5)(A)–(B). As some courts have put it, the DTSA thus authorizes suits alleging three theories of trade secret misappropriation: (1) acquisition, (2) disclosure, and (3) use. See, e.g., AUA Private Equity Partners, LLC v. Soto, Civil No. 1:17-8035-GHW, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018); Camick v. Holladay, 758 F. App'x 640, 645 (10th Cir. 2018).

Here, Zaccari alleges that Apprio "unlawfully obtained . . . and used" "a copy of . . . [hi]s CRR Software without his authorization." Compl. ¶ 57. He further alleges that "Apprio acquired the software application containing [CRR's] source code . . . through improper means and was not authorized to share [it] without his consent." Id. ¶ 60. Apprio moves to dismiss, contending that such allegations cannot make out a claim for trade secret misappropriation under the DTSA because they consist of a series of unsupported "legal conclusions." See Def.'s Mot. at 26–27. Zaccari, for his part, responds that Apprio has ignored critical factual allegations that support his

---

[9] Because the Court will dismiss the civil conspiracy claim on this ground, it need not consider Apprio's alternative argument that the Copyright Act preempts the claim. See Def.'s Mot. at 24–26.

12

trade secret claim, including that "Apprio . . . 'treated Zaccari's CRR Software as if it was part of Apprio's work product for [the government].'"  Pl.'s Opp'n at 17 (quoting Compl. ¶ 24).

The Court agrees with Apprio.  The complaint is devoid of factual allegations that, if true, would make out a claim for trade secret misappropriation under the DTSA.  In fact, the only allegations even arguably relevant to trade secret misappropriation concern the government or DT, the other contractor—not Apprio.  Zaccari alleges, for instance, that after developing the CRR software and demonstrating its capabilities for both Apprio and the government, "Zaccari . . . emailed a copy of his CRR Software application to [Beverly] Murray," DCMA's "team leader for BPR 1," "and some other members of the BPR 1 team so that they could further evaluate it."  Compl. ¶ 16 (emphases added).  Zaccari further alleges that he "did not . . . license or otherwise give permission for anyone on the BPR 1 team to do anything other than evaluate . . . CRR," and that "[u]pon observing [a DCMA employee] making visual modifications to . . . his software code," he "instructed her to stop" doing so "without his express, prior permission."  Id. (emphasis added).  Zaccari also alleges that "[t]he BPR 1 team . . . removed Zaccari's name as [CRR's] author . . . and renamed the application"; McNeil, a DCMA employee, "collaborated with DT[] to copy Zaccari's CRR Software and prepare a derivative work that uses some or all of [his] source code"; DCMA estimated the derivative work would save the government millions of dollars; and "DCMA . . . shared copies of [CRR] with other DoD agencies."  Id. ¶¶ 19–21, 23 (emphases added).  As for Apprio, however, the complaint alleges only that it failed to "confront DCMA about the unauthorized use of his CRR Software," generally "treated . . . CRR . . . as if it were part of [its] work product," and, in response to McNeil's "demand," "directed Zaccari to give the source code for his CRR Software to Mr. McNeil."  Compl. ¶¶ 18, 24 (emphases added).

13

This version of events, drawn entirely from the complaint, does not plausibly state a claim for trade secret misappropriation. At no point does Zaccari allege that Apprio even possessed CRR or its source code, let alone that Apprio improperly "acquired," "disclosed," or "used" it within the meaning of the DTSA. Instead, the only allegations potentially relevant to misappropriation point squarely at either the government or DT, neither of which are defendants in this action.

All that is left are Zaccari's "naked assertions" that Apprio unlawfully obtained and used, or otherwise improperly acquired, CRR. Iqbal, 556 U.S. at 678 (alteration omitted). Even liberally construing the complaint in Zaccari's favor, such assertions cannot survive a motion to dismiss. See id. ("Threadbare recitals of the elements of a cause action, supported by mere conclusory statements, do not suffice [to state a claim]."); see also Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) ("[T]he Court need not . . . accept legal conclusions cast as factual allegations.").[10] Hence, the Court will dismiss the trade secret misappropriation claim against Apprio for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court will grant Apprio's motion to dismiss the complaint. A separate order will issue on this date.

/s/  
JOHN D. BATES  
United States District Judge

---

[10] The proposed DTSA claim suffers from a number of other fatal defects. The complaint asserts, for instance, that Apprio acquired Zaccari's source code through "improper means," which the DTSA defines to mean "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means . . . ." 18 U.S.C. § 1839(6). But the complaint contains no allegation that Apprio used any such means in connection with acquiring, using, or disclosing CRR or its underlying code. Additionally, the DTSA defines the term "trade secret" as, inter alia, valuable information the owner "has taken reasonable measures to keep . . . secret." 18 U.S.C. § 1839(3)(A). But even a liberal construction of the facts pleaded suggests that Zaccari himself disclosed the source code and application to the government. See Compl. ¶¶ 16–20.

Dated: June 4, 2019